UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| **TERRY LAURENCE,** individually, and on behalf of others similarly situated,<br><br>   Plaintiff,<br>vs.<br><br>**HARRIS TEETER, LLC,**<br><br>   Defendant. | Case No. 3:17-cv-602 |

## COLLECTIVE AND CLASS ACTION
## COMPLAINT WITH JURY DEMAND

Plaintiff, TERRY LAURENCE, individually and on behalf of all others similarly situated, by and through his attorneys LINDLEY LAW, PLLC and JTB LAW GROUP LLC, hereby brings this Collective and Class Action Complaint against Defendant, HARRIS TEETER, LLC, and states as follows:

### INTRODUCTION

1. This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, TERRY LAURENCE (hereinafter referred to as "Plaintiff"), individually and on behalf of all similarly situated persons employed by Defendant, HARRIS TEETER, LLC. (hereinafter referred to as Harris Teeter or "Defendant"), arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the North Carolina Wage and Hour Act, N.C. Gen. Stat. §§ 95-25.1, *et seq.*, and Defendant's breach of its contractual obligation to pay Plaintiff and other hourly-paid Keyholders, Grocery Managers, and Assistant Grocery Managers for all hours worked.

2. Defendant does business as "Harris Teeter: Neighborhood Food and Pharmacy," a supermarket chain currently operating approximately 243 stores in seven (7) states: North Carolina, South Carolina, Virginia, Georgia, Florida, Delaware, Maryland and the District of

1

Columbia.

3. Plaintiff and similarly situated Keyholders, Grocery Managers, and Assistant Grocery Managers employed by Defendant were victims of Defendant's common unlawful policies in violation of the FLSA and North Carolina Wage and Hour Act, including:

a. Failing to pay hourly-paid Keyholders and Assistant Grocery Managers for time spent "off the clock" before their shifts picking up keys from Grocery Managers' residences and driving to their work sites, and after their shifts driving back to Grocery Managers' residences and dropping off keys;

b. Requiring Plaintiff and other hourly-paid Keyholders, Grocery Managers, and Assistant Grocery Managers to clock out for a total of thirty (30) minutes each shift for a meal/rest break, despite the fact that in many such periods, they either did not enjoy a free, uninterrupted break, were required to perform work, see 29 CFR § 785.19(a) ("Bona fide meal periods are not worktime" if the "employee … [is] completely relieved from duty for the purposes of eating regular meals"); and/or were clocked out for twenty (20) minutes or less, see 29 CFR § 785.18 ("Rest periods of short duration, running from 5 minutes to about 20 minutes … must be counted as hours worked"); and

c. Improperly calculating Plaintiff's and other similarly situated hourly-paid Keyholders', Grocery Managers', and Assistant Grocery Managers' overtime rates of pay by only multiplying their regular hourly pay by 1.5, as opposed to also factoring in the semi-annual "profit bonuses". *See* 29 CFR § 778.209 ("Where a bonus payment is considered a part of the regular rate at which an employee is employed, it must be included in computing his regular hourly rate of pay and overtime compensation.").

4. As a result, there were many weeks in which Plaintiff and other putative Collective and Class members did not receive compensation calculated at time-and-a-half (1.5) of their regular rate of pay for all hours worked, including hours in excess of forty (40) in a workweek, in violation of the FLSA, North Carolina Wage and Hour Act, and Defendant's contractual obligation to pay its employees for all hours worked.

5. Plaintiff brings this collective and class action pursuant to 29 U.S.C. § 216(b) and Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and all other similarly situated Keyholders, Grocery Managers, and Assistant Grocery Managers employed by

2

Defendant in the applicable time period, and seek unpaid minimum, overtime, and contractually-owed wages, in addition to liquidated damages, fees and costs, and any other remedies to which they may be entitled.

## JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq.*

7. The court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

8. The Court has personal jurisdiction over Defendant because it at all relevant times its company headquarters has been in North Carolina.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) and (3) because Defendant employed Plaintiff in this district and because a substantial portion of the events that give rise to the Plaintiff's claims occurred in this district.

## PARTIES

10. Plaintiff TERRY LAURENCE is a resident of Youngsville, North Carolina.

11. Plaintiff was hired in 2011 and is currently employed by Defendant.

12. Plaintiff signed a consent form to join this lawsuit, which is attached as ***Exhibit 1***.

13. Defendant is a North Carolina limited liability company with a principal business address located at 701 Crestdale Road, Matthews, North Carolina 28105-1700.

14. Defendant operates a supermarket chain in approximately 243 stores in seven (7) states: North Carolina, South Carolina, Virginia, Georgia, Florida, Delaware, Maryland and the District of Columbia.

## FACTUAL ALLEGATIONS

**FLSA Coverage**

15. The FLSA applies in this case on an enterprise basis.

16. Defendant's annual sales exceed $500,000.

17. At all relevant times Defendant has had more than two employees engaged in interstate commerce.

18. Plaintiff and other similarly situated hourly-paid Keyholders, Grocery Managers, and Assistant Grocery Managers engaged in interstate commerce during their employment and therefore they were/are also covered by the FLSA on an individual basis.

**Defendant's Employment of Keyholders, Grocery Managers, and Assistant Grocery Managers**

19. Defendant has employed Keyholders, Grocery Managers, and/or Assistant Grocery Managers at all, if not most of its supermarket locations.

20. Plaintiff's and other hourly-paid Keyholders', Grocery Managers', and Assistant Grocery Managers' job duties have included opening and/or closing the supermarket, unloading trucks, doing register overrides, and addressing customer issues.

21. Defendant has classified Plaintiff and other similarly situated hourly-paid Keyholders, Grocery Managers, and Assistant Grocery Managers as hourly-paid, non-exempt employees, and has not guaranteed them any minimum weekly salaries.

22. Plaintiff and other similarly situated hourly-paid Keyholders, Grocery Managers, and Assistant Grocery Managers have regularly worked full-time schedules which regularly include hours in excess of forty (40) in a workweek.

23. Plaintiff and other similarly situated hourly-paid Keyholders, Grocery Managers, and Assistant Grocery Managers received paystubs from Defendant purporting to show their hourly rate of pay for regular and overtime hours.

24. At all relevant times, Defendant maintained a formal (but ineffectual) policy of paying hourly-paid Keyholders, Grocery Managers, and Assistant Grocery Managers for all hours worked, as evidenced by Defendant paying them an hourly rate of pay, furnishing them paystubs showing their agreed hourly rates, and instructing them to use Defendant's time-keeping system in order to be paid, or not paid, for any time.

25. Defendant agreed to pay hourly-paid Keyholders, Grocery Managers, and Assistant Grocery Managers for all hours worked, as evidenced by Defendant paying them an hourly rate of pay, furnishing employees with paystubs showing their agreed hourly rates, and instructing them to use Defendant's time-keeping system in order to be paid, or not paid, for any time.

**Defendant's Unlawful Pay Policies**

**Unpaid Pre and Post-shift Work**

26. Prior to many shifts, Defendant required hourly-paid Keyholders and Assistant Grocery Managers to drive to the residence of a Grocery Manager to pick up keys before arriving at the supermarket.

27. On such shifts, the hourly-paid Keyholders' and Assistant Grocery Managers' compensable workday began at the time they picked up keys from the Grocery Manager's residence, as picking up keys was integral and indispensable to hourly-paid Keyholders' and Assistant Grocery Managers' principal job duty of opening the supermarket.

28. Plaintiff and other hourly-paid Keyholders and Assistant Grocery Managers were not paid for the time they spent picking up keys from Grocery Managers' residences and driving to the supermarket before their shifts.

29. After many shifts, Defendant required Plaintiff and other hourly-paid Keyholders and Assistant Grocery Managers to drive to the residence of a Grocery Manager to drop off keys

after leaving the supermarket.

30. On such shifts, Plaintiff's and other hourly-paid Keyholders' and Assistant Grocery Managers' compensable workday ended at the time they dropped off keys at the Grocery Manager's residence, as dropping off keys was integral and indispensable to hourly-paid Keyholders' and Assistant Grocery Managers' their principal job duty of closing the supermarket.

31. Plaintiff and other hourly-paid Keyholders and Assistant Grocery Managers were not paid for the time they spent driving from the supermarket to Grocery Managers' residences and dropping off keys after their shifts.

32. The uncompensated time Plaintiff and other hourly-paid Keyholders and Assistant Grocery Managers spent driving to and from Grocery Managers' residences and the supermarket before/after their shifts, amounted to approximately twenty-five (25) to one-hundred (100) minutes per day, which often would have resulted in overtime pay if compensated.

33. Defendant knew that Plaintiff and other hourly-paid Keyholders and Assistant Grocery Managers were spending compensable time driving to and from Grocery Managers' residences and the supermarket before/after their shifts without being clocked in or receiving pay, but failed to compensate them for such time.

### Unpaid "Breaks"

34. Defendant maintained a formal, company-wide policy of requiring Plaintiff and other similarly situated hourly-paid Keyholders, Grocery Managers, and Assistant Grocery Managers to clock out for a total of thirty (30) minutes each shift for a meal/rest break.

35. Defendant has enforced this policy by disciplining Keyholders, Grocery Managers, and Assistant Grocery Managers for failing to clock out for thirty (30) minutes each

6

shift, regardless of whether their workload prevents them from taking a thirty-minute (30) break.

36. As a result, Plaintiff and other similarly situated hourly-paid Keyholders, Grocery Managers, and Assistant Grocery Managers regularly clock out for thirty-minute (30) breaks, even though on many such occasions they are required by Defendant to continue performing compensable, productive work during such periods, such as unloading trucks, doing register overrides, and addressing customer issues.

37. Thus, there have been many times within the statutory period in which Plaintiff and other similarly situated hourly-paid Keyholders, Grocery Managers, and Assistant Grocery Managers clocked out and did not receive pay for thirty (30) minutes, but did not enjoy a free, uninterrupted break during such time because they were required to continue performing work such as unloading trucks, doing register overrides, and addressing customer issues.

38. Although Defendant required Keyholders, Grocery Managers, and Assistant Grocery Managers to clock out for thirty (30) minutes each shift, it did not require these thirty (30) minutes to be consecutive.

39. Thus, there were many shifts in which Plaintiff and other hourly-paid Keyholders, Grocery Managers, and Assistant Grocery Managers avoided discipline for violation of Defendant's thirty-minute (30) break policy by clocking out for short periods of twenty (20) minutes or less, which aggregated to the required thirty minutes (30) over the course of the shift.

40. On such occasions, Plaintiff and other hourly-paid Keyholders, Grocery Managers, and Assistant Grocery Managers did not receive compensation for the short periods of twenty (20) minutes or less for which they were not clocked in.

41. Defendant knew that during times reflected on their clock-in/out records as breaks, many of which were in excess of forty (40) hours in a workweek, Plaintiff and other hourly-paid Keyholders, Grocery Managers, and Assistant Grocery Managers were either not

enjoying free, uninterrupted breaks, were performing work such as unloading trucks, doing register overrides, and addressing customer issues, and/or were taking short breaks of less than twenty (20) minutes, but failed to compensate them for such time.

### Failure to Include "Profit Bonus" in Calculation of Overtime Rate

42. In many weeks, Keyholders, Grocery Managers, and Assistant Grocery Managers received semi-annual "profit bonuses" in addition to their hourly pay, the amounts of which were determined based on a formula that took into account the Defendant's profits and the employee's individual earnings.

43. The semi-annual "profit bonuses" Plaintiff and similarly situated Keyholders, Grocery Managers, and Assistant Grocery Managers received did not result in any increase to the hourly rate they received for working hours in excess of forty (40) in a workweek.

### Plaintiff's Employment

44. Plaintiff began working for Defendant as a stocker in 2011, and continued working in that position until 2015.

45. Defendant rehired Plaintiff in June 2016 to work as a full-time stocker. After several weeks, Defendant promoted Plaintiff to the position of Keyholder which he held from approximately June 2016 through July 20, 2017.

46. On July 20, 2017, Plaintiff was reassigned back to the position of full-time stocker.

47. Throughout his employment with Defendant, Plaintiff primarily worked in Wake Forest, North Carolina.

48. Plaintiff has also worked shifts at Defendant's locations in Raleigh, North Carolina.

49. As a Keyholder, Plaintiff's duties included opening and/or closing the

supermarket, unloading trucks, doing register overrides, and addressing customer issues.

50. As a Keyholder, Plaintiff received an hourly rate of $11.90 per hour.

51. In addition to his hourly rate, Plaintiff received a "profit bonus" that amounted to approximately $700 per semi-annual period.

52. As a Keyholder, Plaintiff typically was scheduled for forty (40) hours per week, which consisted of five (5) shifts or occasionally more, each from 10:30 p.m. to 7:00 a.m., with thirty (30) minutes of each allocated for an unpaid meal break.

53. As a Keyholder, there were shifts in which Plaintiff was required drive to the Grocery Manager's residence to pick up keys before his shift, and drive to the Grocery Manager's residence to drop off keys after his shift, but was not paid for such time.

54. As a Keyholder, there were shifts in which Plaintiff was required to clock out for a total of thirty (30) minutes, but did not receive a free, uninterrupted break during the time he was clocked out, because during such times Plaintiff was required to perform work such as register overrides and addressing customer issues.

55. As a Keyholder, there were shifts in which Plaintiff was required to clock out for a total of thirty (30) minutes, and as a result, was not paid for short rest periods of less than twenty (20) minutes.

56. As a Keyholder, there were weeks in which Defendant deducted time from Plaintiff's clock-in/out records, causing Plaintiff to be paid for less than the total hours he had been clocked in and performing compensable work.

57. As a result of performing unpaid work before his shift and during the time Defendant designated as his meal period, Plaintiff frequently worked over forty (40) hours per week.

58. Throughout his employment with Defendant, there were many weeks in which

9

Plaintiff worked hours in excess of forty (40) in a workweek for which he did not receive compensation at time-and-a-half of his regular rate of pay.

59. Although Plaintiff received compensation for some hours worked in excess of forty (40) in a workweek, Defendant improperly calculated the rate paid to Plaintiff and for such hours by only multiplying his regular hourly pay by 1.5, as opposed to also factoring in the semi-annual "profit bonuses" Plaintiff received.

## COLLECTIVE ACTION ALLEGATIONS

60. Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on his own behalf and on behalf of:

> Any individual who worked for Harris Teeter, LLC as an hourly-paid Keyholder, Grocery Manager, and/or Assistant Grocery Manager at any time within the period of the three (3) years prior to the commencement of this action prior to the commencement of this action through the date of judgment.

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition as necessary.

61. Excluded from the proposed FLSA Collective are Defendant's executives, administrative, and professional employees, including computer professionals and outside sales persons.

62. With respect to the claims set herein, a collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The class of employees on behalf of whom Plaintiff brings this collective action are similarly situated because: (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policy, or plan; and (c) their claims are based upon the same factual and legal theories.

63. The employment relationships between Defendant and every FLSA Collective

member are the same and differ only by name, location, and rate of pay. The key issues are the same for every FLSA Collective member, to wit:

a. Whether the time FLSA Collective members spent spent driving to and from Grocery Managers' residences and the supermarket before/after their shifts is compensable;

b. Whether Defendant maintained a policy or practice of failing to pay FLSA Collective members for time spent driving to and from Grocery Managers' residences and the supermarket before/after their shifts;

c. Whether FLSA Collective members received free, uninterrupted meal periods during the times they were required by Defendant to clock out for breaks;

d. Whether the periods (if any) in which FLSA Collective members were relieved from duty while clocked out were compensable;

e. Whether Defendant was permitted to exclude semi-annual "profit bonuses" from the calculation of FLSA Collective members' overtime rates of pay.

f. Whether Defendant's violations of the FLSA were willful and/or in good faith.

64. Plaintiff estimates the FLSA Collective, including both current and former employees over the relevant period, will include approximately five-hundred (500) members. The precise number of FLSA Collective members should be readily available from a review of Defendant's personnel and payroll records.

## RULE 23 CLASS ACTION ALLEGATIONS

65. Plaintiff brings this action pursuant to Fed R. Civ. P. 23(b)(2) and (b)(3) on his own behalf and on behalf of:

> Any individual who worked for Harris Teeter, LLC as an hourly-paid Keyholder, Grocery Manager, and/or Assistant Grocery Manager in North Carolina at any time within the period of two (2) years prior to the commencement of this action through the date of judgment.

(hereinafter referred to as the "Rule 23 Class"). Plaintiff reserves the right to amend this

definition as necessary.

66. Excluded from the proposed Rule 23 Class are Defendant's executives, administrative, and professional employees, including computer professionals and outside sales persons.

67. The members of the Rule 23 Class are so numerous that joinder of all Rule 23 Class members in this case would be impractical. Plaintiff reasonably estimates that there are at least 40 Rule 23 Class members. Rule 23 Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

68. There is a well-defined community of interest among Rule 23 Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Class. These common legal and factual questions, include, but are not limited to, the following:

   a. Whether Defendant contractually agreed to pay Rule 23 Class members for all hours worked;

   b. Whether Rule 23 Class members are owed wages for time spent driving to and from Grocery Managers' residences and the supermarket before/after their shifts is compensable;

   c. Whether Rule 23 Class members are owed wages for times in which they were required by Defendant to clock out for breaks, despite not receiving *bona fide* meal periods;

   d. Whether Defendant's violations of the North Carolina Wage and Hour Act were willful and/or in good faith.

69. Plaintiff's claims are typical of those of the Rule 23 Class in that he and all other Rule 23 Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Class members' claims and his legal theories are based on the same legal theories as all other Rule 23 Class members.

70. Plaintiff will fully and adequately protect the interests of the Rule 23 Class and has retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff nor his counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Class.

71. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

72. This case will be manageable as a Rule 23 Class action. Plaintiff and his counsel know of no unusual difficulties in this case and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

73. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

74. Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Class and declaratory relief is appropriate in this case with respect to the Rule 23 Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**(29 U.S.C. § 216(b) Collective Action)**
**Violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*.**
**FAILURE TO PAY OVERTIME**

75. Plaintiff re-alleges and incorporates all previous paragraphs herein.

76. 29 U.S.C. § 207(a)(1) provides:

> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

77. 29 CFR § 785.18 provides, in part:

> Rest periods of short duration, running from 5 minutes to about 20 minutes, are common in industry. They promote the efficiency of the employee and are customarily paid for as working time. They must be counted as hours worked. Compensable time of rest periods may not be offset against other working time such as compensable waiting time or on-call time.

78. 29 CFR § 785.19(a) provides, in part:

> Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating.

79. Plaintiff and other FLSA Collective Members worked many workweeks in excess of 40 hours within the last three years.

80. At all times relevant to this action, Defendant failed to pay Plaintiff and other FLSA Collective members the federally mandated rate of 1.5 times the regular rate of pay for all hours worked in excess of 40 in a workweek.

81. In workweeks where Plaintiff and other FLSA Collective members worked 40 hours or more, they should have been paid at the federally mandated rate of 1.5 times of each employee's regular rate of pay, but were not.

14

82. Defendant's failure to pay Plaintiff and other FLSA Collective members overtime wages was knowing and willful. Defendant knew that its policies resulting in Plaintiff and FLSA Collective members not being paid for time spent driving to and from Grocery Managers' residences and their supermarkets to pick up and drop off keys, and for times in which they were required to clock out despite not receiving *bona fide* meal breaks, and Defendant could have properly compensated them for such work, but did not. *See* 29 U.S.C. § 255(a) ("[A] cause of action arising out of a willful violation [of the FLSA] may be commenced within three years....").

83. Defendant's failure to pay Plaintiff and other FLSA Collective members overtime was not done in good faith, or in conformity with or in reliance on any written administrative regulation, order, ruling, approval, or interpretation by the U.S. Department of Labor and/or any state department of labor, or any administrative practice or enforcement policy of such departments.

84. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or his unpaid wages (and unpaid overtime if applicable) plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

85. Defendant is in possession and control of necessary documents and information from which Plaintiff would be able to precisely calculate damages.

**COUNT II**
**(Rule 23 Class Action)**
**Violations of the North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.6**
**FAILURE TO PAY WAGES**

86. Plaintiff re-alleges and incorporates all previous paragraphs herein.

87. Plaintiff and Rule 23 Class members were employed by Defendant within the meaning of the North Carolina Wage and Hour Act, and were not exempt from the statute's

15

requirements.

88. N.C. Gen. Stat. § 95-25.6 has provided:

> Every employer shall pay every employee all wages and tips accruing to the employee on the regular payday. Pay periods may be daily, weekly, bi-weekly, semi-monthly, or monthly.

89. Defendant violated N.C. Gen. Stat. § 95-25.6 by failing to pay Plaintiff and other Rule 23 Class members wages accrued from time spent driving to and from Grocery Managers' residences and their supermarkets to pick up and drop off keys, and for times in which they were required to clock out despite not receiving *bona fide* meal breaks.

90. As a result of Defendant's violations of the North Carolina Wage and Hour Act, Plaintiff and the Rule 23 Class members are entitled to recover unpaid wages dating two (2) years back, *see* N.C. Gen. Stat. § 95-25.22(f), plus an additional equal amount in liquidated damages, reasonable attorneys' fees, and costs of this action, pursuant to N.C. Gen. Stat. § 95-25.22.

### COUNT III
### (Rule 23 Class Action)
### North Carolina Common Law
### **BREACH OF CONTRACT**

91. Plaintiff re-alleges and incorporates all previous paragraphs herein.

92. At all times relevant to this action, Defendant maintained contracts with Plaintiff and every other Rule 23 Class member which required it to pay each employee for each hour they worked at his or his contractual hourly rate as provided therein.

93. Plaintiff and every other Rule 23 Class member performed under the contract by doing their jobs and carrying out pre, mid, and post-shift activities that Defendant required or accepted.

94. By not paying Plaintiff and every other Rule 23 Class member the agreed upon hourly wage for the pre, mid, and post-shift activities performed each shift, Defendant

systematically breached its contracts with Plaintiff and each member of the Rule 23 Class.

95. Plaintiff's and the Rule 23 Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour but less than 40 hours per week (i.e., "gap time" claims).

96. As a direct and proximate result of Defendant's breaches of the contracts alleged herein, Plaintiff and every other member of the Rule 23 Class have been damaged, in an amount to be determined at trial.

97. Defendant is in possession and control of necessary documents and information from which Plaintiff would be able to precisely calculate damages.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff, Terry Laurence, requests an entry of an Order the following relief:

- a. Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA overtime claims set forth herein (Count I);

- b. Certifying this action as a class action (for the Rule 23 Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's state law claims (Counts II and III);

- c. Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all FLSA Collective members and Rule 23 Class members, and permitting Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

- d. Designating Plaintiff as the representatives of the Rule 23 Class and undersigned counsel as Class counsel for the same;

- e. Declaring Defendant willfully violated the FLSA and the Department of Labor's attendant regulations as cited herein;

- f. Declaring Defendant violated North Carolina Wage and Hour Act and that said violations were intentional, willfully oppressive, fraudulent and

malicious;

g. Declaring Defendant breached its contracts with Plaintiff and the members of the Rule 23 Class by failing to pay them for each hour they worked at a contractual hourly rate;

h. Granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff and the FLSA Collective and the Rule 23 Class, the full amount of damages and liquidated damages available by law;

i. Awarding reasonable attorneys' fees and costs incurred by Plaintiff in this action as provided by statute;

j. Awarding pre- and post-judgment interest to Plaintiff on these damages; and

k. Awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff, Terry Laurence, individually and on behalf of all others similarly situated, by and through his attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above entitled claims.

Dated: October 6, 2017.

By: /s Trey Lindley
Trey Lindley (NC Bar ID: 31650)
**LINDLEY LAW, PLLC**
225 S. McDowell Street
Charlotte, NC 28204
T: +1 (704) 457-1010
F: [(704) 457-1002]
tlindley@lindleylawoffice.com
*Local Counsel for Plaintiff*

Jason T. Brown (*pro hac vice pending*)
Nicholas Conlon (*pro hac vice pending*)
JTB LAW GROUP, LLC
155 2nd St., Suite 4
Jersey City, NJ 07302
T: (877) 561-0000
F: (855) 582-5297
jtb@jtblawgroup.com
nicholasconlon@jtblawgroup.com
*Lead Counsel for Plaintiff*

# EXHIBIT 1

# CONSENT TO SUE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA

**TERRY LAURENCE,** individually, and on behalf of others similarly situated,

    Plaintiff,

vs.

**HARRIS TEETER, LLC,**

    Defendant.

Case No.

## CONSENT TO SUE

    I hereby consent to be a Plaintiff in the Fair Labor Standards Act case captioned above. I hereby consent to the bringing of any claims I may have under the Fair Labor Standards Act (for unpaid minimum wages, overtime, liquidated damages, attorney's fees, costs and other relief) and applicable state wage and hour law against the Defendant(s). I further consent to bringing these claims on a collective and/or class basis with other current/former employees of Defendant(s), to be represented by JTB Law Group LLC and Lindley Law, PLLC, and to be bound by any settlement of this action or adjudication by the Court.

**Signed:** *Terry Laurence*      **Dated:** 09/30/2017

**Name:** Terry Laurence

**Address:** 108 mill creek drive
    *Street*

Youngsville NC 27596
    *City, State, Zip Code*

Doc ID: 0b57c83dad909cedaeac8acd08ddaa3994b2438b